UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT WOODARD,

    Plaintiff,

v.

COLONEL KRISTE ETUE, INSPECTOR
MICHAEL JOHNSON,

    Defendants.

Case No. 18-12560
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [16]

Scott Woodard is a Michigan State Police Officer ("MSP") and the Executive Director of the Automobile Theft Authority ("ATPA"). Woodard alleges the Michigan State Police stripped him of his police powers and placed him on suspension after he brought to light alleged misuse of funds. So he brings a First Amendment retaliation claim against Kriste Etue and Michael Johnson, both high-ranking members of the Michigan State Police. (ECF No. 15, PageID.104.) Etue and Johnson move to dismiss. For the reasons that follow, Woodard's claims proceed to discovery.

**I.**

The following narrative is drawn entirely from the First Amended Complaint's non-conclusory allegations, which, at this stage, are taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**A.**

Scott Woodard is a Lieutenant in the Michigan State Police Department. (ECF No.15, PageID.103.) He is also an appointed member of the Automobile Theft Prevention Authority (ATPA). (*Id.*) The ATPA is a creature of statute with authority to exercise its powers, duties and

functions independently of the Michigan State Police (although Woodard's complaint does not tell us what those powers, duties, and functions are). (*Id*. at PageID.104.) When Woodard was acting in his capacity as an ATPA board member, he was not performing any of his official duties as a police officer. (*Id*. at PageID.107.)

The events giving rise to this case began in November 2017. Sometime around then, Woodard was still on the ATPA board and he told two of his fellow board members that he believed Nancy Becker Bennett, a state police department employee, was misusing ATPA funds. (*Id*. at PageID.104.) Allegedly, the misuse of funds included purchasing computer equipment and reimbursing staff salaries. (*Id*. at PageID.105.)

One month later, the ATPA convened a board meeting. (*Id*. at PageID.105.) Attending the meeting was Michigan State Police Colonel Kriste Etue, who, according to Woodard, was "in charge of the Michigan State Police department." (Id. at PageID.104.) ATPA board members asked Etue for a "breakdown of expenditures of ATPA funds." (*Id*.)

At the next ATPA board meeting, held in March 2018, Etue explained away the use of funds for computer equipment. (*Id*.) Etue said the equipment expenditure was related to a "general rise in [another agency's] costs" and not the purchase of equipment. (*Id*.)

In response to Etue's explanation, ATPA board members requested more information. They asked Etue to itemize the cost increase she referenced. (*Id*. at PageID.105.) And they asked Etue to explain the reimbursements for staff salaries, including the salary of Becker Bennett. (*Id*.)

Not long after the March 2018 board meeting, Becker Bennett and Inspector Michael Johnson each told Woodard that someone was "leaking information to the Board." (*Id*.) Soon after, Woodard was "ostracized by his command." (*Id*.)

Woodard put his concerns in a detailed email. (*Id.*) Woodard sent the email to the ATPA board and the Michigan State Police command staff (including Johnson). (*Id.*) In it, he laid out his suspicion that "ATPA funds were being improperly appropriated to the Michigan State Police without ATPA board approval." (*Id.*) Woodard's email requested a full investigation by the state police and the Auditor General. (*Id.* at PageID.106.) In response to the email, the ATPA board called a special meeting between the board of directors and Etue. (*Id.*)

Eleven days after Woodard sent the email, Johnson acted. First, Johnson advised Woodard that he was being relieved of his duties as a Michigan State Police Officer. (*Id.*) The next day, Johnson went to Woodard's house and collected all of Woodard's police gear. (*Id.*) As a result, Woodard took a medical leave. And a few months later, Woodard was placed on an investigatory suspension, with pay, until further notice. (*Id.*) Woodard remains on suspension. (*Id.*)

Woodard filed suit. His amended complaint alleges one count of retaliation in violation of the First Amendment. (ECF No. 15, PageID.106.) Johnson and Etue now urge the Court to dismiss that count, arguing Woodard fails to state a claim upon which relief can be granted.

## II.

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the [amended] complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the [amended] complaint 'contains[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim to relief means "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

3

544, 556 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is not akin to a probability requirement. *Id.* Finally, "[t]he plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

**III.**

Woodard brings a First Amendment retaliation claim. His claim has three familiar elements: protected conduct, adverse action, and a causal connection between the two. *See Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). But because Woodard is a public employee, the protected-conduct element is a bit less familiar. As a narrow exception to the broad protection afforded citizens, the First Amendment offers less protection to public employees. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Mayhew*, 856 F.3d at 461, 462. For Woodard to plead that he engaged in protected conduct, his amended complaint must contain facts sufficient to plausibly allege that his speech was on a matter of "public concern," he was speaking as a citizen and not as an "employee pursuant to his official duties," and his speech interests outweighed his employer's interest in the efficient performance of public service. *Mayhew*, 856 F.3d at 462.

Etue and Johnson say qualified immunity shields them from liability. (ECF No. 16 PageID.123–124.) However, to make their qualified-immunity argument stick, Etue and Johnson ask the Court to look past the amended complaint and rely, instead, on allegations pled in the earlier complaint. (ECF No. 16, PageID.121.) Rely on the first complaint, say Etue and Johnson, and Woodard fails to plead a plausible claim. (*Id.*)

4

True, Woodard has filed two complaints in this case. In the first complaint, Woodard alleged that he was an employee of both the ATPA and the state police. (ECF No. 1, PageID.1.) Woodard also alleged that he alerted the ATPA to possible illegal expenditures by the state police. (*Id.* at PageID.2.) Etue and Johnson say employment with the ATPA is functionally equivalent to employment with the state police and rooting out illegal activity is a quintessential police duty. (ECF No. 16, PageID.112–114.) So anything Woodard said (or emailed) about ATPA funds was within the scope of his police duties and thus not protected by the First Amendment. (ECF No. 16, PageID.125–130.) Yet in the amended complaint Woodard removed the allegations that he was an employee of the ATPA and that he blew the whistle on illegal expenditures. (*Id.*) Nevertheless, Etue and Johnson think those allegations from the first complaint should be treated as binding judicial admissions despite their absence from the amended complaint. And if Woodard is bound by the allegations in the first complaint, Etue and Johnson say qualified immunity applies. (*Id.*)

Etue and Johnson ignore the effect of an amended complaint. An amended complaint supersedes all prior complaints. *See B&H Medical, L.L.C v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) That means the prior complaint becomes a "nullity." *Id.* So even if the first complaint's factual allegations amount to judicial admissions, the admissions are withdrawn by the amendment. *See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171–72 (3d Cir. 2013) (collecting cases); *Schomburg v. Dow Jones & Co.*, 504 F. App'x 100, 104 (4th Cir. 2012) (collecting cases); *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002) (citing *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929) ("A statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission."); *see also Kay v. Minacs Group (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014); *Barnes v. Owens-Corning Fiberglas*

*Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (quoting *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, *unless amended*, are considered judicial admissions conclusively binding on the party who made them." (emphasis added)). Thus, as Etue and Johnson's qualified immunity argument ignores the facts pleaded in the operative complaint, their qualified immunity argument is unavailing.

Etue and Johnson make one more argument in support of dismissal. They insist Michigan law requires all police officers to disclose financial improprieties. But in the amended complaint, Woodard alleges that his email was not part of the day-to-day for state police officers. So, contrary to the test-the-pleadings purpose of Rule 12(b)(6), Johnson's argument looks beyond the four corners of the amended complaint. *See Iqbal*, 556 U.S. at 678–79. To be sure, discovery may prove Woodard wrong. Perhaps Etue and Johnson are correct that Michigan law imposed upon Woodard a duty to disclose; perhaps Woodard was speaking pursuant to his duties as a police officer. But, on 12(b)(6), Etue's and Johnson's final argument does not succeed.

In sum, Etue and Johnson's two arguments fail. Etue and Johnson are not entitled to qualified immunity based on factual allegations in the nullified first complaint. And any discussion of Woodard's job duties based on information outside the complaint skips past the text and purpose of Rule 12(b)(6). So Etue and Johnson's motion to dismiss (ECF No. 16) is denied.

SO ORDERED.

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE

Date: August 15, 2019

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 15, 2019.

s/William Barkholz
Case Manager to
Honorable Laurie J. Michelson
